UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Carrie Ann Welch,  Case No.: 14-44618-wsd
  Chapter 7
    Debtor.  Hon. Walter Shapero
_____/

Visions Spa Salon, Inc.,

    Plaintiff,

v.

Carrie Ann Welch,  Adv. Pro.: 14-04574-wsd

    Defendant.
_____/

## OPINION RELATING TO DISCHARGEABILITY OF DEBT

Visions Spa Salon, Inc. ("Plaintiff") filed this nondischargeability proceeding against Debtor Carrie Ann Welch ("Defendant"), alleging a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6) stemming from alleged violations of a non-compete agreement. The Court finds part of the subject debt to be dischargeable.

### FACTS

Plaintiff operated a large, upscale salon, and Defendant commenced employment as a hairdresser with Plaintiff on August 6, 2009. At that time, she signed a "Non-Compete and Nondisclosure Agreement" that contained a non-compete agreement. Plaintiff's vice president Gregory Bond testified that it was Plaintiff's practice to provide its employees with a copy of their signed non-compete agreements. That agreement provided in relevant part:

1

> During Employee's employment with Salon and for a period of one year thereafter, Employee shall not, directly or indirectly, own, manage, operate, join, control, accept employment with, or participate in the ownership, management, operation and control of, or act as an employee, agent or consultant to, or be connected with in any manner, with any business which is competitive with Salon located within a ten (10) mile radius of Salon, which address is 26800 Beck Road, Novi, MI 48374.

Ex. 1, ¶ 3.B. It is stipulated that the ten mile radius provided for in the agreement is to be measured by geodesic miles (i.e. as the crow flies) from Plaintiff's premises, and not driving distance miles. The agreement also provides that "Employee hereby agrees that Salon is entitled to reimbursement of its attorney fees and costs associated with Salon's enforcement of this Agreement." *Id.* at ¶ 4.D. Defendant voluntarily resigned from her employment with Plaintiff on July 18, 2013. While Defendant did not give advance notice on that day, she did notify a staff member that she would not be returning and left behind the business card of her attorney. Previous to her resignation, Defendant had arranged for employment with Elle Studio in Novi, Michigan and actually commenced employment there on July 23, 2013. It is stipulated that Elle Studio was just within ten geodesic miles of Plaintiff, and thus Defendant's employment there violated the non-compete agreement. Defendant did not inform Plaintiff of the identity of her new employer, either before or immediately after accepting that position. On July 24, 2013, Plaintiff send Defendant via certified mail a cease and desist letter, enclosing a copy of the non-compete agreement. Defendant testified she had forgotten she signed the non-compete agreement, and the cease and desist letter reminded her of its existence. On July 30, 2013, Defendant's attorney, Robert Kostin, represented to Plaintiff that Defendant intended to honor the non-compete agreement, and about that time, Defendant ceased her employment at Elle Studio. Thereafter she began employment at Urban Roots in Plymouth, Michigan, and did so either on August 1, 2013 (as was stipulated to in the Joint Final Pretrial Order) or on July 31, 2013 (as Defendant testified at trial). It was stipulated that Urban Roots was 7.798

2

geodesic miles from Plaintiff. On August 2, 2013 and August 5, 2013, Plaintiff sent letters to Defendant's attorney demanding that Defendant cease her employment at Urban Roots. On August 7, 2013, Plaintiff obtained an Ex Parte Temporary Restraining Order against Defendant from the Oakland County Circuit Court ("State Court") and Defendant shortly thereafter ceased employment at Urban Roots. Defendant testified that on August 11, 2013, she first became aware or fully understood that the non-compete agreement was governed by geodesic distance, rather than driving distance. Incident to a State Court hearing on August 28, 2013, Plaintiff obtained a Preliminary Injunction enjoining Defendant from being employed at Urban Roots or any other business within a ten mile radius of Plaintiff. At that time, Defendant stipulated she understood that she was in violation of the non-compete agreement. On January 8, 2014, the State Court entered a stipulated order in essence making the preliminary injunction permanent and valid through August 7, 2014, awarding Plaintiff $5,000 in attorney fees (an amount that was never subsequently paid), and dismissing that action with prejudice. Defendant thereafter became employed for about ten months at Essentials Salon in Brighton, Michigan, which was clearly outside the ten mile radius.

Defendant filed her Chapter 7 bankruptcy petition on March 20, 2014 and it is a no-asset case. She received her discharge on June 24, 2014. On May 14, 2014, Defendant's then bankruptcy counsel (who is different from the attorney who represented her in the State Court proceeding or this adversary proceeding) had advised Defendant that by virtue of her bankruptcy filing the non-compete agreement (and possibly the various State Court orders incident thereto) became unenforceable. Purportedly relying on this advice, Defendant again began working at Elle Salon on June 3, 2014, which was two months or so prior to the expiration of the one year non-compete period and the January 8, 2014 injunction. On June 11, 2014, Plaintiff filed this adversary

3

proceeding under 11 U.S.C. § 523(a)(6) alleging a debt made up of (a) $15,802.50 of prepetition attorney fees and $509.37 of prepetition costs totaling $16,311.87, and (b) $42,131.25 of postpetition attorney fees and $1,023.17 of postpetition costs, totaling $43,154.42.[1] No other damages are claimed.

Plaintiff sought and obtained a State Court show-cause order relative to an alleged violation of the January 8, 2014 permanent injunctive order and Defendant ceased employment with Elle Salon on July 29, 2014. In an order dated August 13, 2014, the State Court determined that Defendant violated that permanent injunction, but imposed no penalty.

## DISCUSSION

### Preliminary Issue Relating to Postpetition Events

As the recitation of facts indicates, there were in essence three separate instances of claimed violations of the non-compete agreement and/or related State Court orders resulting in the indicated subject debt amounts. Two occurred pre-petition and relate to the $16,311.87 total debt, and the third occurred post-petition giving rise, in full or in part to the $43,154.42 debt. This raises a number of potential issues and questions that have occurred post-trial and hence initially raised by the Court, and thus not yet addressed by the parties. One issue might be that, given that this is a Chapter 7 case, the non-compete portion of the entire employment agreement is part and parcel of, and not severable from, the rest of it, with the result that the employment agreement considered as a whole, and one that was executory at the time of the bankruptcy filing, was automatically rejected by operation of law under § 365(d)(1) when not timely assumed by the trustee. Some (but not all) courts have taken

---

[1] The Court previously granted summary judgment in favor of Defendant as to Plaintiff's § 523(a)(2)(A) allegation.

the position that because executory contracts must be assumed or rejected in their entirety, rejection would thus arguably have eliminated the postpetition enforceability of the non-compete clause portion of the contract, and thus also eliminate any damages or debt recoverable in connection with its attempted enforcement as to the $43,154.42. It was possibly such reasoning that caused Defendant's bankruptcy attorney to give her the indicated advice (though there is yet no direct evidence that was in fact the basis for that advice). There is a severability provision contained in the contract itself. Considering that along with other facts, there is some authority for viewing this type of agreement as one that is separable for purposes of this analysis.[2] Also relevant among other facts are (a) this is a Chapter 7 liquidation and not a reorganization; (b) policy and equitable concerns; and (c) the relative short periods of time involved. A decision favoring Plaintiff based on severability, non-rejection, and continued enforceability arguments could lead to a conclusion that a portion of the subject debt arising from post-petition acts and efforts to enforce the non-compete clause is a separate state law, non-bankruptcy, postpetition matter, arguably justiciable in a state court action rather than in this Court. The foregoing were not part of the trial and post-trial briefing process. The Court now deems them sufficiently important and necessary to a full and fair disposition of this entire proceeding that (in addition to the following discussion and conclusion relating to the pre-petition debt) it will contemporaneously be entering an order providing a procedure for determination of such. That said, the Court will proceed to (1) now rule only on the dischargeability of the indicated $16,311.87 portion of the total claimed debt, and (2) leave a further ruling on the remaining portion to the outcome of the indicated further proceedings.

---

[2] For a summary discussion of the issue of the bankruptcy survivability of non-compete clauses, see Lisa S. Gretcko and L. Judson Todhunter, *When a Contract Is Rejected, Does Its Noncompetition Clause Survive?*, 31 ABI Journal 8, 24-25, 92, Sept. 2012.

## Dischargeability of Pre-petition Debt

Defendant concedes that prepetition she did in fact violate the distance provision of the non-compete agreement, and so the issue is whether or not under the circumstances to those pre-petition violations such created a debt to Plaintiff for a "willful and malicious injury" that is nondischargeable under § 523(a)(6). Any analysis necessarily begins with *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), which involved the dischargeability of a medical malpractice judgment under § 523(a)(6). In the course of concluding it was dischargeable, the Supreme Court essentially ruled that the § 523(a)(6) exception to discharge is limited to conduct that may be classified as "intentional" and does not encompass conduct what is merely negligent or reckless. What *Geiger* might mean or how it should be considered and applied in a breach of contract situation was well expressed in this Circuit by its Bankruptcy Appellate Panel in *Salem Bend Condo. Assoc. v. Bullock-Williams* (*In re Bullock-Williams*), 220 B.R. 345, 347 (B.A.P. 6th Cir. 1998), a case where the plaintiff was seeking nondischargeability under § 523(a)(6) of an unpaid contractual obligation to pay condominium association fees. In the course of its opinion concluding that debt was discharged, the Court said the following:

> The Supreme Court, in *Geiger*, addressed the scope of the "willful and malicious injury" exception. The question as phrased by the Supreme Court was, "[d]oes 523(a)(6)'s compass cover acts, done intentionally, ... that cause injury ..., or only acts done with the actual intent to cause injury?" *Geiger*, 523 U.S. at ----, 118 S.Ct. at 977. The Court found that "[t]he word 'willful' as defined in Black's Law Dictionary means 'voluntary' or 'intentional.' Black's Law Dictionary 1434 (5th ed.1979). Consistently, legislative reports note that the word 'willful' in 523(a)(6) means 'deliberate or intentional.' " *Id.* at ---- n. 3, 118 S.Ct. at 977 n. 3 (citations omitted). Since "[t]he word 'willful' in (a)(6) modifies the word 'injury,' " the indication is "that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* A "more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor ....[such as a] 'knowing breach of contract'...." *Id. (citation*

6

*omitted)*... Although the record reflects that the Debtor had multiple bankruptcy filings and that four prior Chapter 13 cases were dismissed, it does not reflect that any of the filings were dismissed for bad faith. With regard to payment of fees to Salem Bend, the Debtor testified that she believed that her payments were being made by the Chapter 13 trustee while she was in bankruptcy and that her children were making the payments when she was outside of bankruptcy. (App. at 38; Tr. of 11/19/97 at 16). The record does not reflect that this particular testimony was controverted. Although it was established that the Debtor failed to pay her condominium association dues, Salem Bend failed to demonstrate that the Debtor acted with intent to cause it harm in not making the payments.

The actual language in *Geiger* reflected in the above is worth repeating given in particular its reference to a "knowing breach of contract" situation. That language is at 523 U.S. at 61-62 as follows:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."Restatement (Second) of Torts § 8A, Comment *a,* p. 15 (1964) (emphasis added).
>
> The Kawaauhaus' more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, *i.e.,* neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left–hand turn without first checking oncoming traffic—could fit the description. See 113 F.3d, at 852. <u>A "knowing breach of contract" could also qualify. See *ibid.* A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed." *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).</u>
>
> Furthermore, "we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988). Reading § 523(a)(6) as the Kawaauhaus urge would obviate

7

14-04574-mlo    Doc 91    Filed 08/16/16    Entered 08/16/16 16:00:40    Page 7 of 12

the need for § 523(a)(9), which specifically exempts debts "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." 11 U.S.C. § 523(a)(9); see also § 523(a)(12) (exempting debts for "malicious or reckless failure" to fulfill certain commitments owed to a federal depository institutions regulatory agency).

(underline emphasis added).

In 4 COLLIER ON BANKRUPTCY ¶ 523.12[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) it is stated:

> Since *Geiger,* there has been some judicial debate concerning the *scienter* necessary to meet the "willfulness" requirement in section 523(a)(6). Most courts have adopted a purely subjective approach, requiring that the debtor desire the consequences of his or her conduct or, at least, subjectively believe that the injurious consequences are substantially certain to result from the conduct.

(footnote omitted). *See also McCallum v. Pixley,* 456 B.R. 770 (Bankr. E.D. Mich. 2011) where the Court said:

> The Sixth Circuit has interpreted *Geiger* to mean that "willful" under §523(a)(6) requires "either that (i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Trantham*, 304 B.R. at 307 (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999)).

There have been a number of other pronouncements from various Courts specifically in breach of contract situations. There is the case of *In re Best*, 109 F. App'x 1, 5 (6th Cir. 2004), in which that Court stated that "[c]onsistent with *Geiger,* we have held that a breach of contract cannot constitute the willful and malicious injury required to trigger § 523(a)(6)." The Court in *In re Stollman*, 404 B.R. 244, 266-67 (Bankr. E.D. Mich. 2009) concluded that a breach of contract can be actionable under § 523(a)(6) if it is accompanied by "some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the 'fresh start' to which the 'honest but unfortunate' debtor would normally be entitled under the Bankruptcy Code[.]" *see also In re Khafaga*, 419 B.R. 539,

8

550-52 (Bankr. E.D.N.Y. 2009) (discussing examples of aggravating factors); Theresa J. Pulley Radwan, *With Malice Toward One? – Defining Nondischargeability of Debts for Willful and Malicious Injury Under Section 523(a)(6) of the Bankruptcy Code*, 7 Wm. & Mary Bus. L. Rev. 151 (2016) (discussing certain states' recent recognition of punitive damages in contract actions). The Tenth Circuit held that "willful and malicious breaches of contract" are nondischargeable if the requisite § 523(a)(6) elements are proven. *In re Sanders*, 210 F.3d 390, *2 (10th Cir. 2000) ("nothing in *Geiger* indicates the Supreme Court's intention to immunize debtors under 11 U.S.C. § 523(a)(6) for 'willful and malicious' breaches of contract."). The Ninth Circuit thus appears to require that, to be actionable under § 523(a)(6), the intentional breach of contract be accompanied by willful and malicious "tortious" conduct. *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008). The Fifth Circuit has opined that "[a]lthough previous decisions by this circuit hold that injuries resulting from a knowing breach of contract may be nondischargeable under Section 523(a)(6), those decisions also require explicit evidence that a debtor's breach was intended or substantially certain to cause the injury to the creditor." *In re Williams*, 337 F.3d 504, 511 (5th Cir. 2003).

There are also cases specifically involving breaches of covenants not to compete. The Court in *In re Caletri*, 517 B.R. 655, at 664 (Bankr. E.D. La. 2014) stated:

> In this case, WRO met the burden of proving a willful and malicious injury under § 523(a)(6). As a result of Dr. Caletri's actions surrounding his breach of contract and violation of the non-competition agreement, Dr. Caletri intentionally acted in a way objectively, substantially certain to cause injury to WRO. The subsequent judgment and damages award by the state court are not subject to discharge through bankruptcy pursuant to § 523(a)(6).

The Court in *In re King*, 403 B.R. 86, 93 (Bankr. D. Idaho 2009) found that damages for breach of a non-compete agreement are dischargeable because in order to be nondischargeable under § 523(a)(6), the breach of contract must be "tortious" under state law.

9

The statute mandates the existence of two distinct requirements i.e.: both "willful" and "malicious." Given the foregoing expressions of what that means a fair summary of the various decisions can be stated as follows:

> The test for willful and malicious injury under Section 523(a)(6), thus, is condensed into a single inquiry of whether there exists "either an objective substantial certainty of harm or a subjective motive to cause harm" on the part of the debtor.

*Williams v. Int'l Bhd. Elec. Workers Local 520*, 337 F.3d 504, 509 (5th Cir. 2003) (quoting *Geiger*, 523 U.S. at 61-62). The noted and emphasized language in *Geiger,* and in the noted *Bullock-Williams* and *In re Best* cases strongly suggests that absent facts that would bring the case within other sections of § 523, a breach of contract, *at least alone* simply does not as a matter of law trigger nondischargeability under § 523(a)(6). In many, if not most, cases where a contract is breached, the breach is "willful," at least in the sense that the breaching party is conscious of the fact that he or she is in fact breaching the contract, keeping in mind the statute requires findings of both "willful" and a "malicious" injury. That said, it does not necessarily follow that such a breach will necessarily *result* in a financial or other injury to the other party or parties. The time of the breach is the appropriate time for considering the then foreseeability of damages, depending of course on the attendant circumstances of that case. A breach of contract inherently invokes the fact or potential of direct or consequential damages which may also include (if as in this case the contract itself provides for it) such things as attorney fees and costs incurred in dealing with or remedying the breach. In this case, there have been no allegations or proof of direct losses such as the loss of specific customers. If perchance this Court's noted legal conclusion is wrong the question then becomes whether the *Geiger* standard has been met in this particular case. It would appear that standard is whether Defendant acted with the actual intent to cause the harm or injury – the harm or injury being the

10

incurring of the indicated attorney fees. The Court concludes that standard has not been factually met in this case. As respects the recited July 2013 events relating to Elle Studio that is clearly the case given the Court's factual conclusion that Defendant at that time had forgotten she had signed the non-compete agreement and when it was called to her attention she immediately ceased her employment at Elle Studio, which occurred within 12 days or so after she left her employment, all in the context of the recited very technical violation itself and the question of how the ten mile radius was calculated and the question of and her having consulted an attorney and having promptly followed his advice. The recited events respecting the employment at Urban Roots require a similar factual conclusion as to the nature or existence of Debtor's intent or state of mind, and notwithstanding a certain subjective fuzziness as to how the ten mile radius was to be calculated considering Debtor's testimony she actually drove the distance, and on that basis, it was more than ten miles. The evidence indicates that Defendant stopped working at Plaintiff's competitions fairly promptly after receiving cease and desist letters.

Plaintiff's vigorous and costly pursuit of litigation following up and continuing those notices to Defendant and Defendant's prompt reaction to those notices appear to the Court to be as much about sending a strong message to its existing and future personnel about the non-compete agreement and what Plaintiff is willing to do to enforce it, as being totally necessary to further deter Defendant. While such might be legitimate from a business point of view, it falls short of permitting them to be considered as required proof of what § 523(a)(6) requires.

The fact that these were two separate incidents should not be seen as changing the ultimate result. Initially at least, each one and its attendant facts should be analyzed separately to see if they meet the statutory standard. Query: if as such they do not (as is true here), does the fact there were

two show some sort of a cumulative sufficient pattern or propensity that should change the result? Not on the facts in this case.

What comes closest to what characterizes this case was set forth in the case of *In re Harland*, 235 B.R. 778, 779 (Bankr. E.D. Pa. 1999). There a state court had found the debtor liable for breaching a non-compete agreement and acted intentionally, knowingly, maliciously, and wantonly, and the Bankruptcy Court stated:

> We believe that sustaining the Plaintiff's § 523(a)(6) cause of action on the basis of its claim for breaches of contract would result in precisely the result which the Court, in *Kawaauhau v. Geiger,* stated would attend an erroneous, broad interpretation of § 523(a)(6). Here, the Debtor clearly acted intentionally, and his actions clearly resulted in injury to the Plaintiff. However, by the very terms of State Court's findings*, the Debtor's intent was focused entirely on maximizing his personal financial interests, not intentionally harming the Plaintiff. The injury which resulted flowed from the Debtor's breaches of his contract, but there is no finding that it actually was a goal of the scheme he pursued, as opposed to the goal of benefitting himself*. We must therefore hold that the instant record is insufficient to support the Plaintiff's claims under § 523(a)(6).

(emphasis added).

Accordingly and for the foregoing reasons, the Court, therefore, concludes the $16,311.87 debt is dischargeable. The Court is contemporaneously entering an appropriate order.

**Signed on August 16, 2016**

                                            **/s/ Walter Shapero**
                                       **Walter Shapero**
                                       **United States Bankruptcy Judge**